# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ANTONIO RICARDO WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:16-CV-886 CAS |
| | ) |
| TERRY RUSSELL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the filing of plaintiff's second amended complaint. After reviewing the complaint, the Court will order the Clerk to issue process or cause process to be issued on the second amended complaint.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. An action is frivolous if it "lacks an arguable basis in either law or fact." Neitzke v. Williams, 490 U.S. 319, 328 (1989); Denton v. Hernandez, 504 U.S. 25, 31 (1992). An action is malicious if it is undertaken for the purpose of harassing the named defendants and not for the purpose of vindicating a cognizable right. Spencer v. Rhodes, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), aff'd 826 F.2d 1059 (4th Cir. 1987). A complaint fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the

complaint that are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Id. at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. Id. at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." Id. The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." Id. at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. Id. at 1950, 1951-52.

**The Second Amended Complaint**

Plaintiff, an inmate at Southeast Correctional Center ("SECC"), brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights. Named as defendants are: Terry Russell (Missouri Department of Corrections, Warden, Eastern Reception Diagnostic Correctional Center ("ERDCC")); Diane Montgomery (Classification Worker, ERDCC); Kathy Moore (Classification Worker, ERDCC); Major Vandergriff (Correctional Officer at ERDCC); Alan Butterworth (Functional Unit Manager, ERDCC); Unknown Holton (Correctional Officer at ERDCC); and Unknown Bashim (Correctional Officer at ERDCC). Defendants are named in their individual capacities.

Plaintiff states that on June 10, 2014, during his incarceration at Eastern Reception, Diagnostic and Correctional Center, he was assaulted in the B-Yard by 10 to 13 inmates. Plaintiff states that three of the inmates involved in the assault against him included Deandre Banks, Trevion Williams and Sherrod Lee. Plaintiff claims that correctional officers Bashim and

Holton witnessed the assault as they exited the Security Complex Building and they did not intervene in the assault or move to break it up in any way. Plaintiff claims that defendants were deliberately indifferent to his health and safety by failing to intervene in the assault by the other inmates. Plaintiff claims he was left with injuries to his face, back, head and wrist after the assault. Plaintiff also claims that inmate Sherrod was caught with a knife after the assault on plaintiff.

Plaintiff asserts that defendant Vandergriff, a correctional officer at ERDCC, took several inmates, including Trevion Williams, into the Security Complex Building the day after the assault on him (June 11, 2014), to conduct interviews. Plaintiff asserts that on June 13, 2014, "plaintiff was observed in the rotunda by H.U. 6 Staff in a physical altercation with Deandre Banks." Plaintiff asserts that he suffered pain and physical injuries as a result of his fight with Banks. He claims he was detained and interrogated by Vandergriff and Correctional Officer Anderson relating to his altercation with Banks. Plaintiff alleges that Vandergriff stated, "We been watching you. We know about what happened on the Yard to you, and it's unfortunate. However, you can take my word that my officers will be held accountable for their actions or the lack of it, so to say." Plaintiff asserts that when Vandergriff was told that Banks was also injured in the fight, he turned to Correctional Officer Anderson and said, "Your guy lied to us and told us this … with White was over with. Call down to 5 House and tell them to Lock Him Up Right Now." Plaintiff states that Correctional Officer Anderson then had Trevion Williams placed in restraints and plaintiff and 6 or 7 other inmates were placed under investigation for assault. Plaintiff claims that Vandergriff's delay in taking actions to deal with Williams and Banks after the June 11, 2014 assault, placed him in an unsafe condition and allowed him to get injured on June 13, 2014.

Plaintiff claims that after he was placed under investigation for assault against Banks, in late June of 2014, plaintiff wrote to defendant Butterworth, his Functional Unit Manager at ERDCC. He asserts that he told Butterworth that he had received threats to his life from the Crips at the prison. He claims that he requested that he remain in a cell in protective custody with "his religious brother" until he transferred to another prison. Plaintiff asserts that he also reiterated his request in person to defendant Butterworth at his segregation hearing, at which defendant Butterworth was presiding. At the hearing, plaintiff states that he also told defendant Butterworth that he did not want to go back into the general population. Plaintiff claims that defendant Butterworth told him, "You guys like killing each other. If more of you guys killed each other out there (in general population), it would make my job a lot easier, less of you knuckleheads I'd have to put up with down here." Plaintiff claims his requests not to go back to general population were denied at that time.

Plaintiff states that on September 1, 2014, he wrote to defendant Butterworth and again requested a transfer away from ERDCC for his own safety, and on approximately September 9, 2014, at his segregation hearing he again asked Butterworth for a transfer. Plaintiff states that on September 9, 2014, Butterworth told him that his request for transfer away from ERDCC was denied and that he could not stay in protective custody because he was too "violent." Plaintiff claims at that time that he was told his only choice was to go to general population or be left in "the hole."

Plaintiff asserts that on September 19, 2014 he was released to general population. Approximately an hour later, plaintiff claims he was beaten by several inmates in his dorm and thrown over the railing from the top tier and onto the bottom floor face down. Plaintiff claims that only an hour after that, he was chased by inmate Banks, who had a knife and was accompanied by other inmates with home-made weapons. Plaintiff asserts that someone allowed

defendant Banks into his Housing Unit, and he was stabbed in the head by Banks and severely injured. Plaintiff alleges that his injuries were so great that he had to be taken to an outside hospital and given treatment to his head, face, back, nose, ankles, ribs and wrist.

Plaintiff alleges that through June, July and August, he continually told his Classification Worker, Diane Montgomery, during her weekly rounds in the dorm, that his life was in danger from Banks, Williams and other members of the Crips, and that he needed to be transferred. Plaintiff claims that Montgomery consistently denied his requests for transfer and his requests for protective custody. He claims that Montgomery even went so far as to assure plaintiff that he shouldn't worry about returning to general population because there would be a waiver for Banks.

Plaintiff alleges that Classification Worker Kathy Moore, placed him in danger when she was interviewing him about a property issue. Plaintiff states that he had filed an IRR relating to property he owned that was believed to be in another prisoner's property box – an inmate named Maxwell. Plaintiff requested that he be interviewed out of his cell and away from other inmates, but Moore refused, stating "If you don't want other inmates to know your business, stop filing IRRs."

Plaintiff claims that she loudly discussed his IRR in front of other inmates, stating other inmates by name, and discussing information relating to threats from the Crips. Plaintiff states that defendant Moore's actions caused several inmates to yell "stop snitching," "he's telling on Maxwell," and various other negative epithets. Plaintiff claims that as a result of Moore's actions in front of other inmates, he was thrown over the railing after he was released from segregation by Maxwell and friends of Maxwell.

Last, plaintiff claims that on June 30, 2014, he wrote a letter to Terry Russell, the Warden at ERDCC, explaining his life was in danger because of threats from other prisoners and as a

result of the prior stabbing from Banks. Plaintiff requested he be transferred to another prison. Plaintiff again wrote to Russell on August 28, 2014, explaining Kathy Moore's behavior in exposing plaintiff's IRR information to other inmates. At that time, plaintiff against requested transfer. Plaintiff asserts that despite his requests to Warden Russell, the Warden signed off on his form transferring him back to general population, where he was thrown from the top tier and then stabbed and beaten. Plaintiff believes Warden Russell also failed to protect plaintiff.

## Discussion

The Eighth Amendment requires officials to "provide humane conditions of confinement" by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To prove unconstitutional failure to protect from harm, plaintiff must show an objectively, sufficiently serious deprivation, meaning that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendant was deliberately indifferent to the substantial risk of serious harm. Id. at 834. The second requirement is subjective and requires that the inmate prove that the prison official had a "sufficiently culpable state of mind." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 302-03 (1991)). An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably. Whitson v. Stone County Jail, 602 F.3d 920, 923 (8th Cir. 2010); see also, Walls v. Tadman, 762 F.3d 778, 782 (8th Cir. 2014).

After reviewing plaintiff's allegations in his complaint, the Court will issue process on plaintiff's claims of failure to protect against defendants Holton, Bashim, Vandergriff, Butterworth, Montgomery and Moore. The Court will also issue process on plaintiff's failure to protect claim against defendant Terry Russell, Warden of ERDCC, as plaintiff has alleged enough to indicate that defendant Russell had notice of plaintiff's risk of serious harm and that some of his correctional officers at ERDCC may have been indifferent to plaintiff's harm.

Although defendant Russell cannot be liable for the actions of the correctional officers' actions under a theory of respondeat superior, he may be liable if he (1) had notice of a pattern of unconstitutional acts committed by subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing injury to plaintiff. Id. See Livers v. Schenck, 700 F.3d 340, 355 (8th Cir. 2012).

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint as to defendants Terry Russell, Diane Montgomery, Kathy Moore, Unknown Major Vandergriff, Alan Butterworth, Unknown Correctional Officer Bashim and Unknown Correctional Officer Holton. Defendants shall be served in their individual capacities through the waiver of service agreement the Court maintains with the Missouri Attorney General's Office.

**IT IS FURTHER ORDERED** that, pursuant to 42 U.S.C. § 1997e(g)(2), defendants shall reply to plaintiff's claims within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that this case is assigned to Track 5: Prisoner Standard.

**IT IS FURTHER ORDERED** that the Clerk shall update the docket to reflect the defendants named in the Second Amended Complaint and administratively term the remaining defendants reflected on the docket.

.

*/s/ Charles A. Shaw*

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 17th day of May, 2017.