UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANTONIO RICARDO WHITE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 4:16-CV-886 CAS |
|  | ) |  |
| TERRY RUSSELL, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion for summary judgment filed by defendants Terry Russell, Diane Montgomery, Kathy Moore, David Vandergriff, Alan Butterworth, Stacey Halton, and Michele Basham (collectively "defendants"). Plaintiff, a Missouri prisoner, brings this action pursuant to 42 U.S.C. § 1983 through appointed counsel, alleging that defendants violated his civil rights by failing to protect him from assault by other inmates. Plaintiff opposes the motion for summary judgment and it is fully briefed. For the following reasons, plaintiff's claims against defendant Moore will be dismissed without prejudice for failure to exhaust administrative remedies, and the motion for summary judgment will be granted as to the other defendants.

## I.    *Legal Standard*

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly

establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

## *II. Facts*

From January to December 2014, plaintiff was incarcerated at Eastern Reception Diagnostic and Correctional Center ("ERDCC") in Bonne Terre, Missouri. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights during and after he was attacked by fellow

inmates on June 10, 2014, June 13, 2014, and September 19, 2014. Named as defendants are: Terry Russell (Warden of ERDCC); Diane Montgomery (Classification Worker at ERDCC); Kathy Moore (Classification Worker at ERDCC); David Vandergriff (Correctional Officer at ERDCC); Alan Butterworth (Functional Unit Manager at ERDCC); Stacey Halton (Correctional Officer at ERDCC); and Michele Basham (Correctional Officer at ERDCC). Defendants are named in their individual capacities.

Plaintiff alleges he was assaulted in B-Yard on June 10, 2014 by a group of inmates, including Deandre Banks ("Banks"). The record reflects that two months prior to the assault, plaintiff and Banks signed a Missouri Department of Corrections ("MDOC") Enemy Waiver declaring that they were not enemies.

Plaintiff alleges that defendants Basham and Halton witnessed the assault and violated their legal duties as correctional officers when they failed to intervene and stop the attack. Plaintiff testified in his deposition that he did not seek medical attention for any injuries attributable to the June 10, 2014 assault and the Court notes that no medical records have been submitted by either of the parties. Defendants Basham and Halton deny witnessing the alleged assault upon plaintiff.

Plaintiff further alleges that on June 11, 2014, defendant Vandergriff met with and interviewed inmates to investigate the assault. Defendant Vandergriff denies knowledge of or involvement in the investigation and testified at deposition that it would have been the responsibility of lower ranked officials to interview inmates regarding an assault. Plaintiff admits in his deposition that he did not personally witness defendant Vandergriff interview the inmates and was only under that belief due to hearsay from unidentified inmates.

Plaintiff alleges that after the June 10, 2014 assault, he stopped defendant Montgomery while she was making her weekly rounds to inform her that he feared for his safety and wanted to be

3

placed on protective custody status and transferred to another prison. Plaintiff alleges that defendant Montgomery's response was to tell him to file an Informal Resolution Request ("IRR"). Defendant Montgomery testified at deposition that it was not within her authority to independently release offenders from administrative segregation or to place them on protective custody status, but that she did have the authority to recommend to a custody staff member that an offender be placed on protective custody status.

Plaintiff alleges that his caseworker defendant Moore subjected him to physical danger when she interviewed him in his cell about an IRR he filed about property he owned and believed to be in another inmate's possession. Plaintiff alleges that he requested to be interviewed away from other inmates, but defendant Moore refused, which caused him to be labeled as a "snitch" and increased his risk to be assaulted. Plaintiff wrote to defendant Russell complaining of this incident and requested a transfer to another facility.

On June 13, 2014, plaintiff had a second physical altercation with inmate Banks. On June 16, 2014, plaintiff wrote a letter to defendant Butterworth to inform him that he had received threats to his life by gang-affiliated inmates. On June 18, 2014, plaintiff was assigned to administrative segregation. On June 30, 2014, plaintiff wrote a letter to defendant Russell to inform him that his life was in danger because inmates believed he stabbed Banks. Plaintiff again requested defendant Russell to transfer him to another institution.

On July 16, 2014, plaintiff attended a segregation hearing presided over by three committee members, including defendants Butterworth and Montgomery. The Classification Hearing Form reflects that the purpose for the hearing was a 30-day review of plaintiff's placement in administrative segregation. Plaintiff did not provide a statement during the hearing and the committee recommended continued segregation from the general population.

4

On September 10, 2014, plaintiff attended a second segregation hearing presided over by the same three committee members. The Classification Hearing Form reflects that plaintiff made the following statement: "Let me out, if your [sic] not gonna transfer me." The Form further indicates that plaintiff had no active sanctions and no declared enemies in general population. Defendant Butterworth testified at deposition that it was not within his authority to transfer an inmate to another facility so they released plaintiff to general population on September 19, 2014 as per plaintiff's request. On the day of release, plaintiff was assaulted by fellow inmates, thrown over a railing, stabbed, and beaten.

## III. Discussion

### A. Administrative Exhaustion

In their motion, defendants first argue that plaintiff did not administratively exhaust his claims as to defendants Moore, Basham, and Halton before he filed the instant lawsuit, as required by the Prison Litigation Reform Act ("PLRA"). Specifically, defendants argue that plaintiff did not exhaust his claims against defendant Moore because he did not file a formal grievance or grievance appeal and plaintiff did not exhaust his claims against defendants Halton and Basham because the IRR he filed against them was untimely and did not refer to them by name.

Plaintiff opposes the motion for summary judgment on these grounds. Plaintiff argues he is not barred from bringing his claims against Moore, Halton or Basham for failure to exhaust administrative remedies because he was prevented from utilizing ERDCC's grievance procedures due to the misconduct of prison officials. Plaintiff does not dispute his failure to file formal grievances or grievance appeals after submitting IRRs against Moore, Halton, and Basham, and does not dispute that he did not specifically name Halton and Basham in his IRR.

5

The record before the Court includes plaintiff's ERDCC grievance records, which reveal the following relevant facts. On September 24, 2014, plaintiff filed IRR 14-1677 complaining that defendant Moore interviewed him in his cell regarding a report he made about missing property, which caused other inmates to label him as a "rat." On the face of IRR 14-1677, it is noted that the investigation was "satisfactory." It is unclear from the document and the parties disagree as to whether a prison official or plaintiff signed off on the investigation as "satisfactory."

On October 8, 2014, plaintiff filed IRR 14-1799 complaining that on June 10, 2014 he was assaulted in B-Yard while two correctional officers witnessed the attack but did not intervene to protect him from injury. Although plaintiff did not name the two correctional officers, he testified that he intended to refer to defendants Halton and Basham. Plaintiff admits IRR 14-1799 was untimely filed pursuant to the MDOC offender grievance process, but argues he submitted a timely IRR to his caseworker on June 20, 2014, which was not filed due to officer misconduct.

The PLRA imposes an exhaustion requirement on state prisoners who wish to pursue a claim under § 1983. The PLRA provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory" and unexhausted claims must be dismissed. Jones v. Bock, 549 U.S. 199, 211 (2007).

The Supreme Court has explained that to properly exhaust administrative remedies, a prisoner must complete the administrative review process in accordance with the procedural rules as defined by the applicable prison grievance process itself. Jones, 549 U.S. at 218-19. Compliance with prison grievance procedures is all that is required by the PLRA to properly exhaust. Id. The Court noted that the level of detail necessary to comply with grievance procedures "will vary from

system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. "The PLRA's administrative exhaustion requirement is an affirmative defense that the defendant has the burden to plead and prove." Nerness v. Johnson, 401 F.3d 874, 876 (8th Cir. 2005). "Where a motion for summary judgment is founded on an affirmative defense, the moving party has the burden to present facts that establish that defense." See Ballard v. Rubin, 284 F.3d 957, 964 n.6 (8th Cir. 2002).

Inmates have only been excused from complying with an institution's grievance procedures when officials have prevented prisoners from utilizing the procedures, see Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001), or when officials themselves have failed to comply with the grievance procedures. See Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001). Plaintiff must present some evidence, other than mere conclusory statements, to demonstrate that he was precluded from fully exhausting his administrative remedies. See Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005).

As to defendant Moore, the record does reflect a question of fact as to whether plaintiff signed off on the investigation as "satisfactory," which could have prevented him from *automatically* receiving grievance and appeal paperwork. However, this question of fact is not material to the case because even if plaintiff was not automatically provided with grievance and appeal forms due to the "satisfactory" designation on IRR 14-1677, plaintiff has not alleged or submitted any evidence that he requested grievance and appeal forms, attempted to obtain such forms and was denied access, or was prevented from pursuing the grievance process against defendant Moore. See Miller, 247 F.3d at 740 (an inmate is deprived of exhausting his administrative remedies when evidence reflects prison officials actually failed to respond to requests for grievance forms). Plaintiff also does not claim he was unaware of the grievance process. To the contrary, plaintiff testified via affidavit that he was familiar with the IRR process. Thus, plaintiff's

7

argument that administrative remedies were unavailable to him solely because of the "satisfactory" designation on IRR 14-1677 lacks merit. The Court will dismiss defendant Moore for plaintiff's failure to exhaust his administrative remedies.

As to defendants Basham and Halton, the Supreme Court has definitively held that exhaustion is not per se inadequate simply because a person being sued under § 1983 was not named or otherwise identified in the administrative process. See Jones, 549 U.S. at 218. All that is necessary to defeat a procedural default is that the prison have the ability from the initial grievance to "identify the unidentified persons and acknowledge that they were fairly within the compass of the prisoner's grievance." Williams v. Beard, 482 F.3d 637, 640 (3rd Cir. 2007). Here, it can be fairly assumed that the ERDCC could have determined the identity of defendants Basham and Halton by checking which correctional officers were assigned to B-Yard on June 10, 2014. Defendants have not presented evidence showing that the identities of Basham or Halton were undiscoverable or that ERDCC grievance procedures require an offender to name a prison official in an IRR. See Burns v. Eaton, 752 F.3d 1136 (8th Cir. 2014) (failure to exhaust administrative remedies is found in a case where prison policy *specifically* requires inmates to name individuals in IRR).

Additionally, there is a question of material fact as to whether prison officials prevented plaintiff from filing a timely IRR concerning the June 10, 2014 incident. Plaintiff submitted an affidavit stating that he completed an IRR against Basham and Halton within 15 days of the June 10, 2014 assault and submitted it to defendant Montgomery, who was his caseworker at the time. Plaintiff further testified that on September 18, 2014, he spoke to a classification officer to inquire about the status of the IRR, who informed plaintiff that it was never received and would need to be

8

resubmitted.[1] Plaintiff's statements via this affidavit are sufficient to create a genuine dispute as to whether he submitted a timely written grievance. See McPeek v. Blanchard, 670 F. App'x 424, 424-25 (8th Cir. 2016) (unpublished per curiam).

The Eighth Circuit has held that § 1997e(a) of the PLRA "does not require exhaustion of all remedies; it requires the exhaustion of such administrative remedies as are *available*." Miller, 247 F.3d at 740 (emphasis added) (internal quotation omitted). The Eighth Circuit has stated, "We believe that a remedy that prison officials prevent a prisoner from utilizing is not an available remedy under § 1997e(a)." Id. (internal quotations omitted). Also, compliance has been excused when prison officials themselves have failed to comply with the grievance procedures. Gibson, 431 F.3d at 341. In Foulk v. Charrier, the Court found that the plaintiff had exhausted his available administrative remedies because, once the MDOC failed to respond to his IRR, no further administrative proceedings were "available" to him. Foulk, 262 F.3d at 698. Because there are questions of material fact as to whether plaintiff submitted a timely IRR to his caseworker and whether the IRR was not filed due to officer misconduct, preventing him from accessing the grievance process, the Court will not dismiss plaintiff's claims against Basham and Halton for failure to exhaust his administrative remedies.

---

[1] Defendants argue in their Reply that plaintiff's affidavit is insufficient to create a genuine issue of material fact and should be stricken. The Court disagrees and will consider plaintiff's affidavit for the purposes of defendants' motion for summary judgment. See English v. Payne, 720 F. App'x 810, 811 (8th Cir. 2018) (unpublished per curiam) (affidavit submitted in response to summary judgment motion attesting that inmate submitted unanswered grievances to prison officials was appropriate for reviewing administrative exhaustion); see also Foulk, 262 F.3d at 697 (plaintiff was under no obligation to plead exhaustion in his complaint).

**B. Qualified Immunity and Unconstitutional Failure to Protect from Harm**

Defendants further assert that all of plaintiff's claims under § 1983 are barred by qualified immunity. "Qualified immunity may protect government officials from liability under 42 U.S.C. § 1983, but not if their conduct violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Nelson v. Corr. Med. Servs., 583 F.3d 522, 527 (8th Cir. 2009) (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quotation omitted)). In analyzing a claim of qualified immunity, courts consider two questions: (1) whether the facts a plaintiff has alleged or shown, when viewed in the light most favorable to plaintiff, support a finding that the conduct of defendants violated a constitutional right, and (2) whether the constitutional right was "clearly established" such that a reasonable official would have known his or her actions were unlawful. Nelson, 583 F.3d at 528 (citing Pearson v. Callahan, 555 U.S. 223 (2009)).

Here, plaintiff asserts that defendants failed to protect him from being assaulted. A prisoner's right to be free from violence is clearly established. The Eighth Amendment requires officials to "provide humane conditions of confinement" by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994).

"[P]rison officials do not commit a constitutional violation every time one prisoner attacks another." Young v. Selk, 508 F.3d 868, 871-72 (8th Cir. 2007) (citations omitted). To prove unconstitutional failure to protect from harm, plaintiff must show an objectively, sufficiently serious deprivation, meaning he was incarcerated under conditions posing a substantial risk of serious harm, and the defendant was deliberately indifferent to the substantial risk of serious harm. Id. An inmate "must demonstrate that he suffered extreme deprivations, meaning that he was denied the minimal

civilized measure of life's necessities." Schoelch v. Mitchell, 625 F.3d 1041, 1046 (8th Cir. 2010) (quotation marks and citations omitted).

The second requirement is subjective and requires the inmate to prove that the prison official had a "sufficiently culpable state of mind." Young, 508 F.3d at 873 (quoting Lenz v. Wade, 490 F.3d 991, 995 (8th Cir. 2007)). An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably. Walls v. Tadman, 762 F.3d 778, 782 (8th Cir. 2014); Whitson v. Stone County Jail, 602 F.3d 920, 923 (8th Cir. 2010). Deliberate indifference is "more than ordinary lack of due care for the prisoner's interests or safety" and "describes a state of mind more blameworthy than negligence" but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835 (quotation marks and citations omitted).

### 1. Defendants Stacey Halton and Michele Basham

Plaintiff alleges that on June 10, 2014 he was assaulted in B-Yard by fellow inmates while correctional officers Basham and Halton witnessed the assault and failed to intervene. Plaintiff further alleges that Basham and Halton violated ERDCC protocol by subsequently failing to require the inmates involved in the assault to sign enemy waivers. Plaintiff claims these actions violated his Eighth Amendment rights.

To establish a claim of failure to protect, plaintiff "must show that 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" Schoelch, 625 F.3d at 1046 (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Plaintiff must present "evidence that he suffered an objectively serious mental or physical injury" from the assault or that defendants' failure to protect him from a fellow inmate is "likely to cause serious injury in the future." Id. (citing Helling v. McKinney, 509 U.S. 25, 34 (1993)).

Plaintiff has not presented any evidence to establish that he suffered an objectively serious mental or physical injury as a result of the June 10, 2014 assault. Although plaintiff alleges in his Complaint that he sustained injuries to his face, back, head, wrist, and emotional and mental anguish, the record is devoid of medical evidence supporting a physical or mental injury caused by the assault. In fact, plaintiff testified in his deposition that chose not to see a doctor on the day of or the day after the assault and, although he requested medical care on June 12, 2014 for chest pains, he retracted his request and asked to be placed back in the housing unit as he was being escorted to medical. Thus, plaintiff has not satisfied the objective component of his failure to protect claim to sufficiently show that defendants Basham and Halton violated his constitutional rights.

Additionally, plaintiff has not presented any evidence, via an ERDCC official policy or otherwise, to establish that it was the responsibility of defendants Basham or Halton to process enemy waivers or that their failure to do caused plaintiff an objectively serious deprivation.

The Court therefore concludes summary judgment should be granted in favor of defendants as to plaintiff's claims against defendants Basham and Halton.

### 2. Defendant David Vandergriff

Plaintiff alleges he witnessed several inmates report to the Security Complex building on the morning of June 11, 2014 and that defendant Vandergriff questioned those inmates about the June 10, 2014 assault. Plaintiff further alleges that defendant Vandergriff disregarded a significant risk of harm to plaintiff by failing to take adequate steps to keep the inmates involved in the assault separated from plaintiff and, as a result, he was attacked a second time by inmate Banks on June 13, 2014. Plaintiff claims that defendant Vandergriff's actions violated his Eighth Amendment rights.

The Court finds that plaintiff has failed to introduce sufficient evidence to raise a genuine dispute of material fact on the failure to protect claim against defendant Vandergriff. Specifically,

plaintiff fails to satisfy the subjective prong, in which the inmate must prove the official acted with "reckless disregard of the known risk" to his safety. Holden v. Hirner, 663 F.3d 336, 341 (8th Cir. 2011) (quotation marks and citation omitted).

No evidence of record shows or gives rise to a reasonable inference that defendant Vandergriff was aware of a risk to plaintiff prior to the June 13, 2014 attack or that he recklessly failed to respond to it by separating plaintiff from inmate Banks. See Nelson v. Shuffman, 603 F.3d 439, 447 (8th Cir. 2010). The evidence does not show that plaintiff told defendant Vandergriff that he feared a second assault by inmate Banks, or that defendant Vandergriff took part in the investigation or was on notice of the circumstances giving rise to the investigation. In fact, there is no evidence in the record that any such investigation actually took place on June 11, 2014.

In his deposition, defendant Vandergriff testified that he had no involvement in the alleged investigation, it would have been the responsibility of lower-ranked officials to perform any such investigation, and he had no knowledge of any altercations or investigations involving plaintiff until after plaintiff was assaulted by inmate Banks on June 13, 2014. Defendant Vandergriff further testified that there could have been many reasons for inmates to report to the Security Complex other than for an investigation. Plaintiff admits in his deposition that he did not personally witness defendant Vandergriff interview the inmates and was only under that belief due to hearsay from unidentified inmates. The record lacks any evidence documenting defendant Vandergriff's knowledge of a risk to plaintiff.

The Court therefore concludes summary judgment should be granted in favor of defendants as to plaintiff's claims against defendant Vandergriff.

### 3. Defendants Alan Butterworth and Diane Montgomery

Plaintiff alleges that defendants Butterworth and Montgomery knowingly placed plaintiff in danger by denying his requests for transfer, releasing him into general population after the September 10, 2014 segregation hearing without having an enemy waiver signed, and failing to place him in a single-man cell. Plaintiff claims that these actions violated his Eighth Amendment rights.

The Court finds that plaintiff has failed to introduce sufficient evidence to raise a genuine dispute of material fact on the claim of failure to protect against defendants Butterworth or Montgomery. To state a failure to protect claim under the Eighth Amendment and satisfy the second subjective prong, a prisoner must allege that defendants were aware of facts from which they could infer the existence of a substantial risk of serious harm to him, they actually drew the inference, and they failed to take reasonable steps to protect him. See Farmer, 511 U.S. at 836-38, 844.

The evidence of record reflects that on June 16, 2014, defendants Butterworth and Montgomery recommended that plaintiff be assigned to administrative segregation. Defendant Butterworth was the Committee Chair of segregation hearings and defendant Montgomery was a member of the three-person panel. It was not until plaintiff's second Administrative Segregation Hearing on September 10, 2014, over three months after plaintiff's altercation with Banks, that defendants Butterworth and Montgomery recommended his release to the general population. This recommendation was made only after plaintiff affirmatively stated during the hearing that he wanted to be placed in general population if he could not be transferred to another institution. The official policy on Temporary Administrative Segregation Confinement evidences that defendant Butterworth's position as a Functional Unit Manager and defendant Montgomery's position as a Classification Worker did not grant them the authority to unilaterally transfer plaintiff.

14

The record further reflects that defendants Butterworth and Montgomery and the third committee member presiding over the September 10, 2014 Administrative Segregation Hearing released plaintiff to the general population not only after plaintiff requested such an action, but also after taking into consideration that plaintiff had no declared enemies in general population. An enemy waiver was signed on April 9, 2014 by plaintiff and inmate Banks declaring "we are not enemies."

Plaintiff has not alleged or submitted any evidence to show that he made a request to defendant Butterworth, defendant Montgomery, or any other prison officials that he desired to retract the April 9, 2014 enemy waiver with inmate Banks or that it was official ERDCC policy to have enemy waivers signed before release into the general population. Moreover, plaintiff testified that even if defendants Butterworth or Montgomery automatically supplied him with an enemy waiver form, he would not have signed it, thus making the alleged failure to present a waiver irrelevant.

Finally, plaintiff has not submitted any evidence to show that an assignment to a single-man cell would have prevented future altercations with inmate Banks, who was not his cell mate. Thus, the Court cannot find that defendants Butterworth or Montgomery were aware of facts from which he could infer the existence of a substantial risk of serious harm.

The Court therefore concludes summary judgment should be granted in favor of defendants as to plaintiff's claims against defendants Butterworth and Montgomery.

### 4. Defendant Terry Russell

Plaintiff alleges that defendant Russell had notice of plaintiff's risk of serious harm, but failed to utilize his administrative authority to protect him from assault by Banks. Plaintiff claims that defendant Russell's failure to act violated his Eighth Amendment rights.

Attached to plaintiff's additional statement of facts are two letters he allegedly wrote to defendant Russell. In the first letter, dated June 30, 2014, plaintiff requested transfer to another institution because of death threats he received from "different gangs." In the second letter, dated August 28, 2014, plaintiff requested transfer to another institution due to fear that his life was in danger because inmates believed him to be a "rat." Neither of the letters contained any facts that plaintiff felt threatened by or wanted to remain separate from inmate Banks.

Plaintiff testified at deposition that he did not personally send the letters via the institutional mail system because he was on administrative segregation, but that he gave them to a guard to deposit. Defendant Russell testified at deposition that he did not recall seeing those two letters, but also testified there had never been a time when he received a letter from an inmate who reported that their life was in danger that he did not forward the letter to an investigator or otherwise take action.

"[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." Jones v. Wallace, 641 F. App'x 665, 666 (8th Cir. 2016) (unpublished per curiam) (quoting Prater v. Dahm, 89 F.3d 538, 541 (8th Cir. 1996)). An inmate's complaints of "general fear for his safety" do not establish that a defendant "acted with deliberate indifference by not placing him in protective custody" or initiating an immediate transfer. Id. (quoting Robinson v. Cavanaugh, 20 F.3d 892, 895 (8th Cir. 1994)).

Assuming that defendant Russell received and read plaintiff's letters, there is no evidence that he disregarded a serious risk of harm. The record reflects that on the dates both letters were allegedly submitted to defendant Russell, plaintiff was in protective custody and not in the general population. Moreover, despite plaintiff's claims that he was receiving death threats, the record reflects no attempt by plaintiff to place specific inmates on his enemy list to ensure separation.

16

Thus, on June 30, 2014 and August 28, 2014, it would have been reasonable for defendant Russell to believe that plaintiff was not subject to a serious risk of harm from assault by other inmates.

The Court therefore concludes summary judgment should be granted in favor of defendants as to plaintiff's claims against defendant Russell.

## IV.    *Conclusion*

For the foregoing reasons, plaintiff's claims against defendant Moore will be dismissed without prejudice for failure to exhaust administrative remedies, and the other defendants' motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's claims against defendant Kathy Moore are **DISMISSED** without prejudice for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that defendants Terry Russell, Diane Montgomery, David Vandergriff, Alan Butterworth, Stacey Halton, and Michele Basham motion for summary judgment is **GRANTED**.  [Doc. 54]

An appropriate order of partial dismissal and judgment will accompany this Memorandum and Order.

/s/ Charles A. Shaw
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  7th  day of January, 2019.